**SO ORDERED.**

**SIGNED this 1 day of September, 2026.**

Joseph N. Callaway
United States Bankruptcy Judge

---

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**

**MSS, INC.,**

**Debtor.**

**Case No. 23-02487-5-JNC**
**Chapter 11**

---

**MSS, INC.,**

**Plaintiff,**

**v.**

**Adv. Pro. No. 25-00045-5-JNC**

**HUNT ELECTRIC SUPPLY COMPANY,**

**Defendant.**

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

The matter before the court is the Motion for Summary Judgment (Dkt. 27) and accompanying Memorandum in Support (Dkt. 32) (collectively the "Motion") filed by defendant Hunt Electric Supply Company ("Hunt" or "Defendant"), seeking entry of summary judgment as to two of the remaining three claims of plaintiff MSS, Inc. ("MSS" or "Plaintiff") as contained in the complaint filed in this adversary proceeding on February 28, 2025 (Dkt. 1, the "Complaint").

MSS opposed the Motion with a Memorandum of Law (Dkt. 40, the "Response") and exhibits (Dkt. 41). Hunt filed an Affidavit of Victoria S. Hunt in support of the Motion (Dkt. 29, the "Hunt Aff.") and a reply brief (Dkt. 43). Argument was heard on August 25, 2026, in Greenville, North Carolina (the "Hearing"). Joseph Z. Frost appeared for MSS, and James S. Livermon III appeared for Hunt. The court announced its ruling at the conclusion of the hearing and enters this memorandum in explanation.

**JURISDICITON**

The court has jurisdiction over the parties and the subject matter in this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. The court has constitutional authority to hear and enter a final decision in this contested matter. *Wellness Int'l Network, Ltd., v. Sharif*, 575 U.S. 665, 683, 135 S. Ct. 1932, 1947 (2015).

**FACTUAL BACKGROUND[1]**

MSS is a North Carolina corporation that subcontracts and provides commercial and residential electrical construction and services on projects throughout North Carolina and South Carolina. Hunt is a North Carolina corporation that acts as a wholesale distributor and seller of electrical supplies and materials in the same area. Hunt was the primary electrical supplier for MSS. Prepetition, MSS purchased nearly all of its large construction project electrical materials, supplies, products, and goods from Hunt.

Over time, the MSS open account indebtedness with Hunt exceeded the designated credit limit. The overage resulted from a combination of lack of payment by MSS, and the failure of Hunt employees to enter new purchases into its system on a timely basis. When the overage came to

[1] The stated facts are a fair recitation viewed in the light most favorable to Plaintiff as explained below.

light, Hunt engaged in aggressive collection tactics including daily and weekly payment demands on MSS, threatened cancelation of outstanding unpaid orders, switched to cash-on-delivery terms for some projects, and refused to deliver materials for which payments had not been received.

In the complaint, MSS maintained Hunt's collection efforts raised Hunt from ordinary supplier status to oversee and control status concerning MSS and its business in the year prior to its bankruptcy filing. MSS argued this control status caused Hunt to become an "insider" of MSS, which, if allowed, would increase the relevant "look-back" period for preferential transfers under section 547 of the Bankruptcy Code from 90 days to one year prior to the filing of the petition in this case.

By order filed September 2, 2025 (Dkt. 21, the "Motion to Dismiss Order"), the court dismissed all claims for transfers outside 90 days as well as state law claims for tortious interference with contractual relations and unfair and deceptive trade practices, finding that the allegations contained in the Complaint did not support these causes of action.

As a result, only three transfers totaling $290,053.50 alleged to have been made within 90 days of the filing of the petition remain before the court in this action, being as follows:

(1) A $3,965.34 payment listed by MSS as occurring on June 7, 2023;

(2) A $275,000.00 payment made by NorthView Construction, LLC ("NorthView") to Defendant on July 21, 2023 in connection with a project commonly known as the Meridian at Rogers Branch Project (the "Meridian Project"); and

(3) An $11,088.15 payment listed by MSS as occurring on July 14, 2023.

Hunt moved for summary judgment as to the first two of the three transfers. As to the $3,965.35 payment, Hunt contends it is entitled to summary judgment because the transfer

occurred outside the 90-day preference window. As discussed below, at hearing MSS announced it no longer disputes summary judgment being granted as to this transfer.

As to the $275,000 payment (the "NVC Transfer"), Hunt asserts these funds were received in satisfaction of a Claim of Lien on Real Property and Notice of Claim of Lien Upon Funds dated July 10, 2023 (the "Claim of Lien"), a copy of which is attached to the Motion as Exhibit B (Hunt Aff. ¶ 8). Debtor does not contest that the Claim of Lien (a) relates to materials supplied and used on the "Meridian Project;" (b) was timely filed under North Carolina law; (c) was based on an amount due of $315,683.44, plus interest, court costs, and attorneys' fees (Hunt Aff. ¶ 9); (d) was served properly; and (e) identifies Meridian at Rogers Branch, LLC as the real property owner, NorthView Construction, LLC as general contractor, MSS-Ortiz Electrical Services as the first-tier subcontractor, and Defendant as the second-tier subcontractor and lien claimant (Hunt Aff. ¶ 8). On July 21, 2023, NorthView, the general contractor for the Meridian Project, made payment of $275,000.00 to Defendant in full settlement of the Claim of Lien. The funds were applied to amounts owed by MSS to Hunt for electrical materials, goods, supplies, and products furnished for the Meridian Project (Hunt Aff. ¶¶ 7,10).

MSS maintains the collection of the $275,000.00 was a transfer by or on account of it to Hunt made outside of the ordinary course of business for which it did not receive present value and adequate consideration. Hunt maintains this transaction was for present value and adequate consideration because its lien properly existed prepetition under state law, and the payment released the lien rights no differently than a payment on a valid mortgage.

## DISCUSSION

### I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings pending before the bankruptcy court by operation of Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment is appropriate in adversary proceedings when no genuine issue of material fact exists and those facts are determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). In support, the pleadings, depositions, affidavits, interrogatory answers, and admissions must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). *See* Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. In evaluating summary judgment, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *Humboldt Express, Inc. v. The Wise Co.* (*In re Apex Express Corp.*), 190 F.3d 624, 633 (4th Cir. 1999). If the moving party meets its initial burden, the non-moving party may not rest on the contents of its pleading. *Anderson*, 477 U.S. at 249. The non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962) (per curiam). Only disputes between the parties over facts affecting the outcome of the case preclude entry of summary judgment. *Anderson*, 477 U.S. at 248. The court must examine "the materiality

and the genuineness of the alleged fact issues" in its ruling. *Faircloth v. United States,* 837 F. Supp. 123, 125 (E.D.N.C. 1993) (emphasis omitted).

## II. Avoidance and Recovery of Preferential Transfer

This case currently only involves avoidance of the three identified transfers pursuant to section 547 of the Bankruptcy Code. That section provides that a trustee or debtor in possession may "avoid any transfer of an interest of the debtor in property" that was:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> > (A) on or within 90 days before the date of the filing of the petition; or
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
> > (A) the case were a case under chapter 7 of this title;
> > (B) the transfer had not been made; and
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547; see also 11 U.S.C. § 1107 (granting debtor in possession rights of trustee).

### A. The $3,965.35 Payment

Plaintiff can avoid a transfer to a non-insider under section 547 only if the transfer was made on or within 90 days before the petition date. 11 U.S.C. § 547(b)(4)(A). Plaintiff filed its petition on August 28, 2023, so the 90-day preference period began on May 30, 2023. Though the Plaintiff alleges that the $3,965.35 payment was made on June 7, 2023, the $3,965.35 Check and Deposit Capture establishes the $3,965.35 transfer was made on May 15, 2023 and deposited on May 16, 2023 (Hunt Aff. ¶¶ 4-5). Under 11 U.S.C. § 547(e)(2)(A), a transfer is deemed "made" when it takes effect between the parties, provided it is perfected within 30 days thereafter. The transfer of funds by check takes effect when the check is honored—here, when the funds were

deposited on May 16, 2023. Because this date preceded the May 30, 2023 commencement of the preference period, and because Hunt is not an insider for purposes of this case, the requirements of section 547(b)(4) are not met.

In the Response and at the hearing, MSS did not contest these facts and conceded that the $3,965.35 Transfer was completed outside the requisite 90 days prior to the filing of the petition in this case. Therefore, the court finds Hunt has shown it is entitled to judgment as a matter of law, and the claim against Hunt is dismissed as to the $3,965.35 Transfer.[2]

**B. The Northview Construction Transfer**

MSS does contest Hunt's request for summary judgment regarding the NVC Transfer, the indirect payment of $275,000 made July 21, 2023, by NorthView to Hunt. As noted, these funds represented amounts owed to MSS by NorthView under the NVC Construction Contract. Instead, the funds were diverted to Hunt as a result of the Claim of Lien. No challenge to the validity of the Claim of Lien was made under state law prior to the payment, or in the MSS bankruptcy case after it was filed. Hunt maintains that therefore it was a bona fide secured creditor, and the NVC Transfer could not be a preference.

Under North Carolina statutes, Hunt held two forms of security: (1) a claim of lien upon funds pursuant to N.C. Gen. Stat. § 44A-18, which grants a second-tier subcontractor a lien upon funds owed by the contractor to the first-tier subcontractor; and (2) a claim of lien on real property pursuant to N.C. Gen. Stat. § 44A-23, which grants a lien upon the real property improved. For this reason, Hunt contends Plaintiff cannot establish the greater-than-chapter-7 element of

[2] In the Conclusion of the Response, MSS indicates, without supporting argument or evidence, that it is entitled to summary judgment against Hunt for preferential transfer avoidance totaling $122,125.55. No motion for summary judgment was filed by MSS here, and it utterly fails to identify what transfers totaling $122,125.55 it contends are involved. Of note, in a companion case, *MSS v. Ellen Lighting*, AP No.25-00555, there were two transfers totaling $122,125.55 at issue. It appears to the court that the language in the Response concerning those non-Hunt transfers was inadvertently carried over to this matter due to a "cut and paste" or similar drafting error by MSS. The court will not further address the MSS summary judgment request here.

§ 547(b)(5). "Section 547(b)(5) is a central element of the preference section because it requires a comparison between what the creditor actually received and what it would have received under [chapter 7]." 5 Collier on Bankruptcy ¶ 547.03[7] (Alan N Resnick & Henry J. Sommer, eds., 16th ed. rev.). A payment to a fully secured creditor on account of its collateral does not improve that creditor's position relative to other creditors because the creditor would have been entitled to realize on its collateral absent payment.

MSS never challenged the substantive validity of the subject Chapter 44A Claim of Lien. It did not, for example, argue the Claim of Lien was untimely filed, procedurally defective, never served, or that Hunt did not actually supply materials worth $315,683.44 for the Meridian Project. Further, the Claim of Lien amount ($315,683.44) exceeds the transfer, so no viable argument for payment beyond the secured amount is made. Hunt argues that because the unchallenged facts in the case establish that it was fully secured prepetition and pretransfer by valid Chapter 44A lien rights before and when the NVC Transfer occurred, the payment is not subject to avoidance.

Because no challenge to the validity of the Claim of Lien was made under state law prior to the payment, or in the MSS bankruptcy case after it was filed, Hunt maintains it was a bona fide secured creditor, and the NVC Transfer therefore could not be a preference. Because the $275,000.00 payment therefore did not enable Hunt to receive more than it would have received in a Chapter 7 case, MSS cannot satisfy the requisite claim element found at Section 547(b)(5). *See Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.)*, 412 F.3d 545, 549 (4th Cir. 2005). In addition, with no challenge to the underlying validity of the Claim of Lien, MSS cannot get past the affirmative defenses available to Hunt under 11 U.S.C. §§ 547(c)(4) and (6). *See Hager v. Gibson*, 109 F.3d 201, 209-10 (4th Cir. 1997) (creditor holding perfected security interest in collateral of sufficient value is not a preference transferee).

As a result, Hunt has carried its initial burden of establishing that the NVC Transfer is not subject to avoidance under section 547. To survive summary judgment, MSS must therefore show that notwithstanding the validity of the Claim of Lien, questions of fact remain for trial. It attempts to meet this burden by arguing Hunt has no claim allowable in bankruptcy to support the Claim of Lien—in other words, it owed Hunt nothing. MSS makes this assertion on the basis that it listed Hunt's claim as "disputed" in its chapter 11 case Schedules E/F (BK Dkt. 32 at 13), and that consistent with E.D.N.C. LBR 3002-1,[3] on September 25, 2023, it timely served a Notice of Disputed, Contingent, or Unliquidated Claims (BK Dkt. 42) on Hunt, and that Hunt failed to respond or file a proof of claim by the claims bar date (January 1, 2024). MSS hypothesizes that the failure to respond results in the "disallowance" of Hunt's claim in its entirety under 11 U.S.C. § 502(b)(9), and therefore Hunt would have received nothing in a hypothetical Chapter 7 liquidation, thereby obviating MSS's inability to satisfy the preference element found at § 547(b)(5).

In attempting to meet its burden of repudiation, MSS conflates two distinct legal concepts: (1) the procedural allowance or disallowance of a claim for purposes of distribution and voting within a bankruptcy case, and (2) the existence of substantive property rights under state law that determine a creditor's secured status under § 547(b)(5). MSS does not contest that Hunt supplied it with $315,683.44 in supplies and materials on the Meridian Project and properly perfected its Chapter 44A lien rights under North Carolina law. It admits that outside of bankruptcy, the claim is substantively valid. MSS contends only that the failure to file a proof of claim in this case by

---

[3] The Local Rules provide, "In addition to the duties set forth in Local Bankruptcy Rule 4002-1(b), the chapter 11 debtor shall notify each creditor whose claim is scheduled as contingent, disputed, or unliquidated of that fact within 14 days after filing the schedule of assets and liabilities or within 14 days after addition of any creditors to the petition. Failure to notify a creditor that its claim is listed as disputed, contingent, or unliquidated shall result in the creditor's claim being deemed filed in the amount listed as disputed, contingent, or unliquidated, as though a proof of claim had been filed by the creditor. The debtor shall file a certificate of service with the clerk of court within seven days after service has been made." E.D.N.C. LBR 3002-1.

January 1, 2024, destroyed Hunt's right to distribution in this case, which MSS would then roll retroactively back to eliminate both account and *in rem* lien rights that existed before the petition was filed.

Hunt correctly notes MSS's theory would produce an absurd result: any creditor who received payment on a valid, pre-petition secured claim but later failed to file a proof of claim would be deemed to have received a preference—regardless of the legitimacy of its security interest at the time of transfer. It further explains why this theory is legally flawed for multiple reasons. First, MSS applies the wrong temporal frame to the section 547(b)(5) analysis, measuring Hunt's rights as of the bar date rather than the petition date. Similarly, MSS conflates the procedural disallowance of a claim under § 502(b)(9) with the extinguishment of substantive pre-petition property rights under state law. Next, Hunt points out that MSS's reliance on § 502(d) as a premise to establish avoidability is immaterial and misplaced. Fourth, MSS improperly injects post-petition plan treatment into the preference analysis. Fifth, the payment to satisfy Hunt Electric's valid lien did not diminish the Debtor's estate.

All of these points are valid. The preference statute measures the adequacy of consideration when made, not at some hypothetical later date. Each of the first four elements (section 547(b)(1)-(4)) look to when the transfer was "made." It is not unusual for some transfers "made" within the requisite look-back period to constitute avoidable preferences and for others not to meet the criterium. For example, here Hunt admits the third transfer of $11,088.15 was not made on or credited to a secured claim, leaving it subject to trial.

Where funds are subject to a pre-existing valid and unavoidable lien prior to payment, a debtor's equitable interest in those funds is limited. A transfer of encumbered property with value below the liened amount to the lienholder does not diminish the estate or cause the amount

available to unsecured creditors to be lowered. See *In re Beattie*, 31 B.R. 703 (Bankr. W.D.N.C. 1983) (payments on secured debt did not constitute a preference because the estate was not depleted). MSS's preference claim fails because it cannot satisfy the threshold requirement of § 547(b) that the avoided transfer be one "of an interest of the debtor in property." 11 U.S.C. § 547(b). Although not expressly stated in § 547, "it is implicit from the language used that the transfer must result in a diminution of the bankrupt estate." *Palmer v. Radio Corp. of America*, 453 F.2d 1133, 1135 (5th Cir. 1971) (citing *Nat'l Bank of Newport v. Nat'l Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633 (1912)); *In re Interior Wood Prods. Co.*, 986 F.2d 228, 231 (8th Cir. 1993); *In re Abramson*, 715 F.2d 934, 938 (5th Cir. 1983). As a matter of law, MSS cannot meet its burden under section 547 and summary judgment is therefore granted to Hunt as to the NVC Transfer.

**C. The $11,088.15 Transfer**

Having found defendants are entitled to summary judgment as to the $3,965.34 Transfer and the NVC Transfer of $275,000, the only remaining transfer at issue is the one for $11,088.15 Transfer. Hunt does not seek summary judgment as to that third payment. That matter remains for trial and a new date for the same will be set by separate order.

## CONCLUSION

For the foregoing reasons, Hunt's Motion for Summary Judgment is granted as to all claims related to the $3,965.34 Transfer and the $275,000 NVC Transfer. Those two claims are dismissed with prejudice. The $11,088.15 transfer remains for adjudication in the preference action.

**END OF DOCUMENT**